## THE ACHILLES.

## THE ELLIOTT.

### (District Court, S. D. New York. June 4, 1923.)

1. **Collision ⬅71(3)—Steamship held in fault for collision with drifting barges.**
   A steamship lying near the end of a slip *held* solely in fault for injury of two barges which, while drifting in the slip, but slightly affected by tide or wind, came in contact with her propeller.

2. **Collision ⬅71(3)—Master of barge held not negligent.**
   The master of a barge lying in a slip, though he knew a vessel was coming in and that his barge, with others, would be moved, *held* not negligent in failing to keep continuous watch, where the moving did not involve any apparent danger.

In Admiralty. Suits by the Director General of Railroads and by George Neitzey and another against the steamship Achilles and tug Elliott, with petition by owners of the Elliott for limitation of liability. Decree for libelants against the Achilles alone.

Leonard J. Matteson, of New York City, for Director General of Railroads.

Peter Baumer, of New York City, for George Neitzey.

Peter Alexander, of New York City, for owners of the Elliott.

Richard Reid Rogers, of New York City, for claimants of the Achilles.

Frank V. Barns, of New York City, for Overseas Shipping Co., impleaded.

John W. Crandall, of New York City, for Cosmopolitan S. S. Co.

LEARNED HAND, District Judge. [1] Although this case involves a very substantial amount, I cannot help feeling that, in spite of the excellence of the argument and the ardor of counsel, the result is very clear. As for the fault of the Achilles, it scarcely can be open to serious doubt. The law is acknowledged by both sides to be found in The Nevada, 106 U. S. 154, 1 Sup. Ct. 234, 27 L. Ed. 149, which applies almost verbatim here. The explanation given by Dyer only serves to make clearer his fault. He had ample warning, saw the boats, made his own judgment, waited, and waited too long. I am rather disposed to believe that he did not see the barges at all until it was too late, meanwhile attending to something else. Later, finding himself called upon to give an excuse, he said that he had seen them drifting

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

down the middle of the channel, when suddenly they turned while 30 or 40 feet off, and drifted against the propeller. I venture to doubt whether that could have happened. It certainly was much less likely than the story told by the bargees of the Parish and the Army boat, who say that these were in contact with the side of the steamer for some time before they drifted down upon the propeller. But it makes no difference as far as the fault of the Achilles is concerned, for either Dyer did not see the barges at all, and so failed altogether in attending to his business, or, there being no such intervention of an unexpected factor as would excuse him, his attention was faulty. He either acted without expedition after he saw the barges move, or he did not see them in time. So that the Achilles, in my judgment, stands charged.

Now, there are three other persons in the case who are by one party or another also sought to be charged, the libelant, in the person of the barge Parish, the tug Elliott, and the Cosmopolitan Company. The first question which arises is whether any one of those three should under the circumstances be held at all, assuming that one or more of them is responsible for the casting loose of the two barges. That is a question not quite so clear to me as it is to Mr. Rogers. Here was a slip, which was, to be sure, quite crowded, but which had no tide (or a tide which worked to keep the barges against the north side of Pier 2), in which there was no substantial wind, and where it was the purpose of the tugs to cast loose some 15 or more barges, and either by pushing or pulling head them up toward the west end of the slip near the bulkhead. The Achilles was lying, we may suppose, with her propellers not more than 50 to 100 feet from the pier ends. There was no noticeable current in the slip, running out. There was but a slight breeze. To say that it was a reasonable consequence of letting a barge go adrift in that slip that it should come in contact with the moving propellers of the Achilles seems to me open to considerable doubt. I think, if I were forced to decide it, I should say that, considering the location of the vessel and the barges, it was not one of those consequences which a reasonable man need apprehend; that without any active power the two barges in question, through the breeze which existed (for that was the only motive force that I can think of), should be brought into contact with the moving propeller.

[2] However, I do not find it necessary to make an absolute finding on that fact, for it seems to me that none of the three parties I have mentioned as possibly at fault for the turning loose of the barge is in fact shown here to be so. Let me take them up in the order in which they were dealt with at the argument. The first is the bargee himself, who it was very insistently and ardently argued was at fault because, knowing, as he did, that the Sarcoxie was coming into the slip and that he was lying in her berth, he did not stay on deck in the expectation of possibly being cast adrift. The argument is, as I understand it, that until he was permanently placed in a new berth he should have been ready at least to observe what was being done with him, and possibly to take some action, just what is perhaps not clear, to avoid danger to his barge. I am willing to rest squarely on the conclusion that the situa-

tion did not call for his apprehending any such danger as is suggested. I agree that the case must be decided upon the assumption that he knew that the Elliott was coming in to move barges, and in the end to move him with the rest; but I cannot agree that a bargee, with knowledge of such facts, must be on watch from the outset until the maneuvers are ended. I think he is entitled to assume that, when his time comes, if anything is required of him, he will be notified, and that, if he hears nothing, he cannot be expected to be attentive to the movements of all the other barges, whose changes of lines may affect his own position.

Take this case as an instance: If the bargee is liable here for failure to watch, it means that he must have an eye on whether any one interferes, not only with his own fasts, but with any of the other three boats to which he was made fast. Now, I suggest—indeed, I submit— that such a duty imposes upon him an unreasonable degree of care. To what purpose must he do so? Is he to assume that every change in the position of barges in a slip of that sort is attended with danger? His power in any case is very slight. The tug masters are not apt to lend a very kindly ear to his suggestions. There was no storm, in which any change in position may be vital to the safety of his property, and perhaps of his own life. The degree of care must be measured by the consequences of neglect. To be cast off then and there was not a danger requiring high vigilance. Considering, then, that he might reasonably rely upon the fact that he would not be put adrift without notice, and, if he was, that there was no great danger involved, I cannot help feeling that he was quite at liberty to continue his dinner until he got notice that something was wrong. After he did get such notice, I do not understand that anybody criticizes his efforts to do what he could.

Next comes the question of the Elliott. I do not think it makes any difference whether there was a line leading astern from the Army barge to the Emma R. or not. On the whole, I am inclined to believe that there was not. The testimony on that subject, with I think the exception of one witness, all comes from the witnesses of the Elliott herself, and they would naturally wish to excuse Fitzpatrick, as it was through him that their tug is sought to be charged. My reason for thinking that there was none is that, if there had been, I can conceive no possible motive for later throwing it off. There are at least two witnesses, the bargees of the Army boat and of the Parish, who say that there was no such line. Moreover, although we do not know with certainty that the two barges began to drift off at once after the O'Leary was taken out, I think the probabilities are, from the way the witnesses tell their stories, that that is what happened. If so, Fitzpatrick was clearly at fault for casting loose the two barges, provided it be a fault at all to cast loose barges at that time and in that place, which for the purposes of this case I am assuming that it was. Fitzpatrick, on that theory, would be a contributing tort-feasor here; but I think the Elliott is not.

If the tug had undertaken the duty of drilling his barge out, included in that duty would have been disturbing the fasts of the Army barge. If Fitzpatrick had been a deckhand, or the master or the mate of the

Elliott, she would have been chargeable with his failure properly to provide against the maneuver she undertook. But this was not such a case. The Elliott put herself under the orders of Fitzpatrick, who was the harbor master. Having done so, she was responsible only for the careful execution of such orders as Fitzpatrick gave her, unless, indeed, those orders independently involved some danger to other people's property, and by that I mean in case only what she did, the part she took, the movements she made, unless those in themselves involved danger. This is not a case of that sort. On the contrary, it was Fitzpatrick of his own motion who threw off the fasts of the Army boat, which put both the barges adrift. The Elliott had nothing to do with that; it was not on the initiative of anybody on board of her; it was not done by a member of her crew. Thereafter she did pass a line to the O'Leary and took her off, but to remove the O'Leary did not imperil the two barges, and did not insure their going adrift. They were adrift already. Therefore I cannot think that any action of hers had anything to do with this result.

There remains the Cosmopolitan Company. Even if it be true (and I am disposed to think it is true) that it was the Cosmopolitan's men who threw off all the pier lines, so that the Sarcoxie might slowly push her way in, this had nothing to do with the collision. I believe these lines were cast off after the two barges were sent adrift. But suppose it occurred before. Time makes no difference in my judgment, because if the whole flotilla was adrift before the lines were thrown off between the O'Leary and the Army boat, that was not a contributing cause to the movement of these two barges toward the end of the slip. The whole flotilla might have moved out into the slip, but these barges would not have been injured by that. They had to move outward and eastward a distance of probably 300 or 400 feet, and if they had remained attached to the flotilla as a whole there is every probability that, measured lengthwise of the pier, they would have stayed about where they were. No one suggests that the whole of the flotilla moved out towards the end of the pier, and the tugs were there to prevent it. So, although I think I should agree that the workmen of the Cosmopolitan Company were almost certainly those who threw off these lines (and I think that they were thrown off), I cannot see that that has anything to do with the collision.

The case turns upon two factors: First, who loosened the two barges from their moorings to the O'Leary and deprived them of any other fastening? And, second, who failed to observe their slow approach to the stern of the Achilles so that they came in contact with the propeller? I think the two persons chargeable are Fitzpatrick and Dyer. As I have said, if it were necessary to decide whether Fitzpatrick should be made liable in the case, I should have some doubt. It seems to me open to genuine question whether throwing the barges loose at that time and place made the person who did it a contributory tort-feasor for the eventual damage. But that question, as I said at the outset, I reserve.

I can find no party here who from any aspect may be said to be responsible, except the steamer. You may therefore take your decree against the steamer alone.